**Ennis v. Ennis**

*Henry M. Ekker*, for plaintiff.

*Harvey E. Moore*, for defendant.

STRANAHAN, P. J., July 29, 1970.—Plaintiff has secured a divorce from bed and board from defendant, and the controversy now centers about the question of alimony.

On December 23, 1968, a hearing was held on a petition for alimony pendente lite, and, since both parties were represented by counsel, a conference was held for the purpose of exploring the possibility of an agreement by stipulation.

On February 6, 1969, a second hearing was held and the parties, as a result of a stipulation, agreed on alimony pendente lite. This agreement, in part, provided that the husband was to pay $450 a month alimony pendente lite, and, in addition thereto, the wife was to remain in the residence, and the husband was to pay the mortgage, taxes and insurance, together with maintenance costs. The monthly mortgage payments were $222.05. It was further agreed by the parties that both the husband and wife would continue to occupy the premises, and, therefore, a part of the mortgage and maintenance costs of the home would inure to the benefit of the husband.

A further stipulation was entered into by the parties that the husband had the following assets:

(A) A one-half interest in N. S. Car Wash Enterprises, Inc., which had a paid-in capital of $50,000.

(B) An airplane which he purchased for the sum of $19,000 and which had an encumbrance against it in the sum of $14,000. This airplane was being used partially with the consent of George Ennis, defendant's father, in the N. S. Car Wash Enterprises, Inc.

The only charge made for the use of the airplane was the cost of the gasoline.

(C) The husband defendant was employed by the N. S. Car Wash Enterprises, Inc., and during the year 1968 received compensation in the amount of $21,000.

(D) A Cadillac automobile owned by Valley Car Wash, which is available for personal use. This car has installed in it a stereo and a telephone.

(E) While the N. S. Car Wash Enterprises, Inc., is apparently hard pressed for funds, testimony indicated that it was in the process of negotiating a loan in the sum of $100,000, for the purpose of financing and paying unpaid obligations.

At a later time, the wife proceeded with her divorce, which was uncontested, and on March 21, 1969, the master heard testimony in support of the wife's claim. Defendant did not appear at that hearing.

Since this case involved the question of permanent alimony, the court referred the matter back to the master for the purpose of taking additional testimony in regard to the establishment of alimony. This was done on May 1, 1969, after notice was given to the attorneys for both parties, and the wife testified at the hearing. Defendant and his attorney were present, but offered no testimony relative to defendant's ability to pay permanent alimony.

On June 12, 1969, the court entered an order awarding a divorce from bed and board and granting permanent alimony to plaintiff in the amount of $600 per month. For some reason unknown to everyone, the prothonotary did not file this decree of divorce, together with award of alimony, until October 7, 1969.

Defendant failed to comply with the order and plaintiff filed a petition on November 5, 1969, requesting that defendant be held in contempt. A hear-

ing on this petition was held on November 28, 1969. At this time defendant contended that he had never received the order granting the divorce from bed and board and awarding alimony in the sum of $600 per month. This matter is disputed by plaintiff's counsel who contends, among other things, that there was an oral notice given of this order, but the fact remains that under local rules of court there is no obligation on the part of the prothonotary to give notice in an uncontested divorce of the granting of the divorce and the allowance of alimony. It might be pointed out that the local rules were changed in this respect as the result of the alleged confusion that took place in this case.

On December 17, 1969, this court entered an order that $600 a month permanent alimony be due and payable from October 7, 1969, which was the date the prothonotary indicated that the various papers were filed, and defendant was given 30 days to comply with this order. Defendant has filed exceptions to the order, and the court must now dispose of these exceptions.

The first exception that defendant takes to the order is that the $600 is in excess of the amount permitted by statute. In 23 PS §47, Act of May 2, 1929, P. L. 1237, sec. 47, it is provided that the court may allow the wife such alimony as her husband's circumstances will admit, but the same shall not exceed the third part of his annual profit or income of his estate. It should also be pointed out at this time that defendant has an order against him for the support of his three children in the amount of $200 a month.

Defendant's argument is primarily one of arithmetic, in which he starts out with the figure of $21,000 and deducts therefrom child support, income taxes, Social Security taxes, and city wage taxes, thereby arriving at a total deduction of $6,753.20. He, therefore, concludes that there is available to the defendant $14,246.80, which amount defendant contends should

form the basis upon which the court computes the amount available for payment to the wife.

The fallacy in this reasoning is rather obvious. In the first place defendant has at no time ever come forward with an accurate statement of his annual income, and what the value of his interest in various corporations may be. He chose to enter into a stipulation at the time of the hearing dealing with alimony pendente lite rather than to produce various business and tax records for which the wife had issued a subpoena duces tecum. Such being the case, the amounts in the stipulation do not necessarily reflect accurately the total assets of the husband.

At the time of the hearing by the master, defendant elected to produce no testimony as to what his assets were and, therefore, the court had no choice but to rely on the stipulation agreed upon by the parties, together with the testimony of the wife. Based on this testimony, it would appear that the husband has an income of considerably more than $21,000, since he has available to him without charge an expensive automobile and the use of an airplane. In addition to this, he obviously has assets in the N. S. Car Wash Enterprises, Inc.

At no time has defendant produced any testimony as to what his taxable income was in 1968, nor has he shown what deductions he would be entitled to take on that income. He now wants the court to take into consideration what his income tax would be, and what his Social Security and city tax would be, in order to lower the amount upon which he claims the court should allow alimony. Since defendant has elected not to make this information available, he cannot now ask the court to take judicial notice of it.

The second fallacy in defendant's reasoning is that the statute which allows the court to grant no more than one-third of the husband's profit or income makes

no provision for adjustment for taxes, and, therefore, there is no authority for the argument that defendant advances.

The final matter that is of some interest in the present case is the fact that defendant agreed to pay alimony pendente lite in the amount of $450, together with payments for the upkeep and maintenance of the home, which would have amounted to a considerable sum, all of which would be in excess of $600. When the court entered the order for permanent alimony it deleted the obligation that the husband had to make mortgage payments and instead reduced the matter to a lump sum.

We find nothing that the court has done which we believe to be unfair and which would require any change in the order of October 7, 1969.

## ORDER

And now, July 29, 1970, the exceptions of defendant are dismissed.